UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SETH ANDRADE,                    )
                                 )
              Petitioner,        )
       v.                        )         CIVIL ACTION
                                 )         NO. 15-13247-IT
OSVALDO VIDAL,                   )
                                 )
              Respondent.        )

## REPORT AND RECOMMENDATION ON PETITION
## FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

June 29, 2018

DEIN, U.S.M.J.

### I. INTRODUCTION

The petitioner, Seth Andrade ("Andrade" or the "defendant"), was convicted of first degree murder on the theory of deliberate premeditation, and of unlawful possession of a firearm, by a Bristol County jury on April 3, 2012.  His conviction was affirmed by the Massachusetts Supreme Judicial Court ("SJC") on June 25, 2014 in Commonwealth v. Andrade, 468 Mass. 543, 11 N.E.3d 597 (2014).  He filed his timely habeas petition pursuant to 28 U.S.C. § 2254 challenging the trial judge's questioning of potential jurors concerning the effect, if any, of the absence of eyewitness testimony to the murder on their ability to reach a verdict.  Andrade contends that by her actions, the trial judge sat a jury that was predisposed towards guilt, and then coerced a guilty verdict, in violation of his right to an impartial jury as guaranteed by the Sixth Amendment of the United States Constitution.

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the habeas petition be DENIED.

## II.  <u>STATEMENT OF FACTS</u>[1]

### <u>Underlying Crime</u>

The facts relating to the underlying crime are not controlling on the issues raised by the habeas petition, and will be summarized herein.  As the SJC described the facts the jury could have found, shortly after 8:30 p.m. on January 20, 2010, the victim was shot and killed in the backyard at 192 Purchase Street in New Bedford, Massachusetts.  <u>Andrade</u>, 468 Mass. at 544, 11 N.E.3d at 599.  There were two gunshot wounds to the victim's head, and while the medical examiner could not determine which wound was first, both were fatal and would have caused an immediate loss of consciousness.  <u>Id.</u>  There were no eyewitnesses to the shooting, but nearby residents heard loud bangs and saw two young men, appearing to be in their late teens, leaving the area.  <u>Id.</u>  One was wearing a brown canvas jacket and had a hood over his head, and the other was wearing a hooded sweatshirt and a blue "puffy" down jacket.  <u>Id.</u> at 544, 11 N.E.3d at 600.

The victim, accompanied by three men wearing hooded sweatshirts, had attempted to buy marijuana earlier in the evening, but the money provided by one of the three men was not real, and the purchase was not consummated.  <u>Id.</u> at 544-45, 11 N.E.3d at 600.  The victim and the three men left the scene of the aborted transaction at 8:01 by taxicab, and were dropped off near the residence of Edwin Jorge.  <u>Id.</u> at 545, 11 N.E.3d at 600.  At 8:20 p.m., a taxicab

---

[1]  The Respondent filed the state court record in a multi-volume Supplemental Answer ("SA") at Docket No. 17.  The SA will be cited by volume and page number.

returned to the area near Edwin's home and drove the victim and two men to Acushnet Avenue, which is behind Purchase Street.  Id.  The telephone call for the cab came from the victim's cellular phone.  Id.

About midnight, Edwin picked up Andrade and two other men (not the victim) from Tyrone Solano's residence.  When Edwin asked what was going on, Andrade said "[d]rop it."  Id.  About a week later, Andrade told Edwin that, when the victim was looking as his phone, Andrade had "popped him," and then "popped him again," and demonstrated the two shots.  Id.  Andrade also told Edwin that they had disposed of all the evidence except for Andrade's jacket, which he had left at Solano's home.  Id.  A subsequent search of Solano's home, pursuant to a search warrant, produced Andrade's brown jacket.  Id.  Gunshot residue was found on the lower sleeves and cuffs of the jacket, as well as inside the right front jacket pocket.  Id.

On February 2, 2010, Andrade was given his Miranda warnings and agreed to speak with police in a recorded interview.  Id. at 546, 11 N.E.3d at 600.  First he denied being in the backyard of 192 Purchase Street where the victim had been killed.  Id.  Later he admitted to being there when someone else had come into the yard and shot the victim, with the second shot being the "finishing" shot.  Id. at 546, 11 N.E.3d at 600-01.  He explained the gunshot residue on his jacket as being due to the fact that he went shooting on occasion at a relative's home.  Id. at 546, 11 N.E.3d at 601.  This was denied by the relative.  Id. at 546 n.3, 11 N.E.3d at 601 n.3.

Andrade did not testify at trial.  His theory was that someone else had shot the victim, and he called a forensic chemist to testify that the negative control used in the Commonwealth's gunshot residue testing had been contaminated.  Id. at 546, 11 N.E.3d at 601.  He also attacked the credibility of Edwin Jorge, a key witness for the prosecution.  Id.

### Jury Selection

The prosecutor had proposed individual voir dire questions concerning the effect, if any, of the absence of eyewitness testimony on the potential juror's ability to render a verdict.  Id. Defense counsel did not object.  Id.  In fact, the record reflects that defense counsel suggested wording for, and approved the language of, the questions posed to the potential jurors.  SA II:159-61.  Thus, as the SJC found, the trial judge "asked each potential juror some variation of the following question":

> In this case, you may not hear any testimony from an eyewitness to the actual shooting of [the victim].  In other words, the Commonwealth's case will be based largely on testimony and forensic evidence that's often referred to as circumstantial evidence.  Circumstantial evidence is proof of a chain of circumstances from which you can infer that a fact exists.  Would the fact that you will not hear eyewitness testimony to the actual shooting in and of itself prevent you from finding the defendant guilty if the Commonwealth, through circumstantial evidence, is able to convince you beyond a reasonable doubt of the defendant's guilt?

Andrade, 468 Mass. at 546-47, 11 N.E.3d at 601.  The record indicates that while this question was answered unequivocally by most prospective jurors, it was followed by questions summarizing or clarifying the juror's answer on occasion when necessary.  In addition, unless a juror was excused based on his or her answer to this question, each potential juror was asked the following question:

> Would you be able to follow my instructions that there is no difference in the probative value between direct and circumstantial evidence, and that

[4]

circumstantial evidence may be competent to establish guilt beyond a reasonable doubt?

Id. at 547 n.4, 11 N.E.3d at 601 n.4.[2]

There were thirteen potential jurors who answered the judge's initial question "affirmatively or ambiguously[.]"  Id. at 547, 11 N.E.3d at 601.  Each of them was dismissed for cause, without any follow-up questions being asked concerning the potential juror's ability to set aside their own opinions and follow the instructions of the judge.  Id.

While not itemized in the SJC decision, the record establishes that the potential jurors' answers to the judge's questions came after other issues, usually about scheduling, were discussed with the trial judge.  The specific answers to the challenged question of whether the absence of eyewitness testimony would prevent the potential juror from finding the defendant guilty were as follows:

1.    "How would they prove beyond if there's no -- ... I have a slight problem then."  SA II:194.

2.    "Probably."  Id. at 217.

3.    "The degree of this crime and the charges?  It probably would."  Id. at 254.

4.    "I don't know."  Id. at 256.

5.    "Yes."  Id. at 257-58.

---

[2] While not referenced in the SJC's decision, the record indicates that the following questions were posed to the individual potential jurors following the questions regarding circumstantial evidence: (1) "There may be testimony in this case from individuals who have received certain promises or deals from the Commonwealth regarding their own actions.  Would that fact alone affect your ability to be a fair and impartial juror and decide this case based solely on the evidence introduced in the courtroom and the law?"  (2) "The defendant is Cape Verdean/Portuguese, and the deceased is African American. Do you have any feelings about Cape Verdean/Portuguese people that may affect your ability to be fair and impartial?"  E.g., SA II:178-79.

6.      "So in other words, based on just evidence would I be able to conclude -- ... "Okay.  I don't think so, no."  Id. at 279.

7.      "Yes."  Id. at 281-82.

8.      "Probably.  ... Yes."  Id. at 283-84.

9.      "I would have a hard time finding him guilty if no one saw it."  Id. at 294.

10.     "I think I would want an eyewitness.  ... Yes."  Id. at 338.

11.     "Yes."  Id. at 345.

12.     "Yes, it would."  SA III:371

The thirteenth juror engaged in the following colloquy with the court:

A.      [In response to the question:]  It's too hypothetical.

Q.      What's too hypothetical?

A.      To answer in black and white yes or no without hearing it first to give you a definitive answer.  It's too hypothetical.

Q.      You can't say whether that would prevent – the absence of eyewitness testimony would prevent you from –

A.      It depends how the evidence presented builds the case one way or the other.  To say black and white would I say no, I can't convict based on circumstantial, just giving the statement, but I would –

Q.      Just giving a statement?

A.      In answer to your question.

Q.      You're not trying to get out of service?

A.      Hell, no.  No.  I'm answering the question.

Q.      You're excused.  You're excused.

SA II:316-17.  This colloquy followed a discussion with the potential juror who wanted to be excused due to his work schedule, and due to child care issues, although he had not listed any children on his juror questionnaire, and had given other inconsistent answers about child care. SA II:314-15.

Andrade contends that the fact that these 13 jurors were excused for cause without the judge posing any follow-up questions was in violation of clearly established federal law, and resulted in a jury that was predisposed to guilt, in violation of his Sixth Amendment right to a fair and impartial jury.  See Andrade, 468 Mass. at 547, 11 N.E.3d at 601.  He also contends that by posing the second question about there being no difference in the probative value of direct and circumstantial evidence, the trial judge created a "one-two punch," which resulted not only in a jury that was predisposed to convict, but "effectively indoctrinated the jury into a guilty verdict."  See Pet. Mem. (Docket No. 24) at 8-9.[3]

### The SJC Decision[4]

The SJC initially reviewed Andrade's objections to the jury selection process on the merits, and sought to determine whether the trial judge abused her discretion in selecting a

---

[3] Andrade also argues in passing that the "propensity toward conviction was exacerbated" by the fact that the Commonwealth used some of its peremptory challenges to strike five potential jurors who "appeared unenthusiastic about circumstantial evidence."  Pet. Mem. at 37.  This argument is not developed and the defendant did not challenge the Commonwealth's use of peremptory challenges in the state courts.  Moreover, the record establishes that both sides used a large number of peremptory challenges without explanation.  See, e.g., SA II:238-39, 271, 290, 329, 337; SA III:380, 385, 388.  Since Andrade does not allege a violation of his constitutional right due to the Commonwealth's use of peremptory challenges, this point will not be addressed further.

[4] Andrade has waived the other two issues he had raised on appeal to the SJC and included in his habeas petition which related to the redirect examination of an immunized witness and the prosecutor's closing argument.  See Andrade, 468 Mass. at 543-44, 11 N.E.3d at 599; Pet. Mem. at 2 n.2.

jury. <u>Andrade</u>, 468 Mass. at 547, 11 N.E.3d at 601.  The Court also noted that if it concluded

that there was such an abuse of discretion, the Court would then determine if there was "a

substantial likelihood of a miscarriage of justice" since the defendant did not object below.  <u>Id.</u>

However, as detailed herein, while the SJC "discourage[d] the practice of posing the type of

question challenged here," the SJC determined that there was no abuse of discretion in

excusing the jurors for cause, or in then asking the follow-up question.  <u>Id.</u> at 549 n.5, 11 N.E.3d

at 603 n.5.  Therefore, the SJC did not consider whether the questioning had created a

substantial likelihood of a miscarriage of justice.  As the SJC ruled:

> "Article 12 of the Declaration of Rights of the Massachusetts Constitution
> and the Sixth Amendment to the United States Constitution, applied to the
> States through the due process clause of the Fourteenth Amendment,
> guarantee the right of a criminal defendant to a trial by an impartial jury."
> *Commonwealth v. McCowen,* 458 Mass. 461, 494, 939 N.E.2d 735 (2010),
> quoting *Commonwealth v. Vann Long,* 419 Mass. 798, 802, 647 N.E.2d 1162
> (1995). "We afford a trial judge a large degree of discretion in the jury
> selection process." *Commonwealth v. Vann Long, supra* at 803, 647 N.E.2d
> 1162. The judge's duty is to "examine jurors fully regarding possible bias or
> prejudice where 'it appears that there is a substantial risk that jurors may
> be influenced by factors extraneous to the evidence presented to them.'"
> *Commonwealth v. Garuti,* 454 Mass. 48, 52, 907 N.E.2d 221 (2009), quoting
> *Commonwealth v. Morales,* 440 Mass. 536, 548, 800 N.E.2d 683 (2003). "In
> deciding juror impartiality, it is sufficient for the judge to 'determine
> whether jurors [can] set aside their own opinions, [properly] weigh the
> evidence ... and follow the instructions of the judge.'" *Commonwealth v.
> Perez,* 460 Mass. 683, 688–689, 954 N.E.2d 1 (2011), quoting *Common-
> wealth v. Bryant,* 447 Mass. 494, 501, 852 N.E.2d 1072 (2006).

> "[A] determination by the judge that a jury are impartial will not be
> overturned on appeal in the absence of a clear showing of abuse of
> discretion or that the finding was clearly erroneous." *Commonwealth v.
> Lopes,* 440 Mass. 731, 736, 802 N.E.2d 97 (2004). "The goal of permitting
> questioning of prospective jurors is to provide a defendant with a
> competent, fair, and unbiased jury. A trial judge, who is aware of the facts
> of a particular case and can observe firsthand the demeanor of each
> prospective juror, is in the best position to determine what questions are

necessary reasonably to ensure that a particular jury can weigh and view the evidence impartially." *Id.*

Previously, we have specifically addressed (and rejected) constitutional challenges to questions to the jury venire concerning the absence of scientific evidence in the Commonwealth's case and have cautioned that such questions "should be posed sparingly." *Commonwealth v. Gray,* 465 Mass. at 339, 990 N.E.2d 528. We have declined to conclude, however, that posing such questions amounted to an abuse of discretion in circumstances where the questions, construed with the judge's instructions on the subject, "did not amount to a command to ignore the lack of scientific evidence." *Id.* at 341, 990 N.E.2d 528. See *Commonwealth v. Perez,* 460 Mass. at 691, 954 N.E.2d 1. Also, in determining whether an abuse of discretion had arisen, we considered whether the questions committed the jury to a verdict in advance or had "the effect of identifying and selecting jurors who were predisposed to convicting the defendant based on evidence the Commonwealth would present." *Id.* These considerations are instructive here.

In this case, the questions were not necessary, particularly in view of the standard jury instructions on direct and circumstantial evidence. The judge, however, did not abuse her discretion in posing them and did not violate the defendant's constitutional rights. The questions did not amount to a command to ignore the lack of eyewitness testimony and to overlook the fact that the Commonwealth had not marshaled direct evidence of the defendant's guilt. Rather, the questions sought to ensure that the jury would be able to convict where the Commonwealth proved its case beyond a reasonable doubt with circumstantial evidence, and that the nature of the type of evidence presented in the case would not prevent the jury from fairly evaluating the Commonwealth's case.*

> *Although we conclude that there was no abuse of discretion or constitutional violation in this case, we discourage the practice of posing the type of question challenged here, as many cases hinge on circumstantial evidence alone and the standard jury instructions cover the issue.  In the rare case that inquiry must be made of a potential juror on the subject, the appropriate question that the judge should ask is whether the juror is willing to follow an instruction that guilt may be established by circumstantial evidence if proved beyond a reasonable doubt.

See *Commonwealth v. Colon–Cruz,* 408 Mass. 533, 556, 562 N.E.2d 797 (1990) (judge correctly instructed to jury that circumstantial evidence is not "some sort of inferior evidence"); *Commonwealth v. Cinelli,* 389 Mass. 197,

[9]

203 n. 9, 449 N.E.2d 1207, cert. denied, 464 U.S. 860, 104 S.Ct. 186, 78 L.Ed.2d 165 (1983), and cases cited (circumstantial evidence alone may suffice to establish guilt beyond reasonable doubt). Also, simply because a member of the jury venire answers that he or she is capable of returning a guilty verdict in the absence of eyewitness testimony does not mean that he or she will necessarily do so. Finally, the questions did not skew the jury that ultimately were selected toward conviction. The judge properly instructed the jury about the differences between direct and circumstantial evidence, that whether the Commonwealth's case was based solely on circumstantial evidence was for the jury to decide, and that whether the evidence is direct or circumstantial, the Commonwealth must prove the defendant guilty beyond a reasonable doubt from all of the evidence in the case. See *Commonwealth v. Pires,* 389 Mass. 657, 664, 451 N.E.2d 1155 (1983); *Commonwealth v. Liakos,* 12 Mass.App.Ct. 57, 60, 421 N.E.2d 486 (1981). The jury are presumed to follow the judge's instructions. *Commonwealth v. Gonzalez,* 465 Mass. 672, 681, 991 N.E.2d 1036 (2013).

<u>Andrade</u>, 468 Mass. at 547-49, 11 N.E.3d at 601-03.

Following the affirmance of his conviction by the SJC, Andrade filed the instant timely habeas petition pursuant to 28 U.S.C. § 2254.

Additional facts will be provided below where appropriate.

### III.  <u>ANALYSIS</u>

### A.    <u>Standard of Review – Habeas Petition Generally</u>

The standard of review to be applied to Andrade's habeas corpus petition is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  The standard allows a federal court to grant a writ of habeas corpus only if the underlying state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "The petitioner must also show that the state court's error had a 'substantial

and injurious effect' on the jury's verdict." Lucien v. Spencer, 871 F.3d 117, 122 (1st Cir. 2017) (citation omitted).  Andrade argues that the SJC decision was an unreasonable application of clearly established law and was based on an unreasonable determination of facts.

In undertaking its analysis, "a habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Wetzel v. Lambert, 565 U.S. 520, 524, 132 S. Ct. 1195, 1198, 182 L. Ed. 2d 35 (2012) (quoting Harrington v. Richter, 562 U.S. 86, 102, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)).  Moreover, "[i]n this context, 'clearly established law' signifies 'the holdings, as opposed to the dicta of [the Supreme] Court's decisions.'" Howes v. Fields, 565 U.S. 499, 505, 132 S. Ct. 1181, 1187, 182 L. Ed. 2d 17 (2012) (quoting Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000)).

A writ of habeas corpus is only appropriate "under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistin-guishable facts." Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002).  By contrast, relief is proper "under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." Id.  An unreasonable application is more than just error, entailing "some increment of incorrectness beyond error[.]" McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002) (en banc) (citation omitted); accord Bell, 535 U.S. at 694, 122 S. Ct. at 1850.  The "increment of incorrectness beyond error" "must be

[11]

great enough to make the decision unreasonable in the independent and objective judgment of

the federal court."  Brown v. Ruane, 630 F.3d 62, 67 (1st Cir. 2011) (quoting McCambridge, 303

F.3d at 36).  Moreover, under this analysis, "a state court is afforded deference and latitude."

Hensley v. Roden, 755 F.3d 724, 731 (1st Cir. 2014) (citation omitted).

Finally, as mandated by 28 U.S.C. § 2254(e)(1), the "state court's factual findings are

presumed to be correct unless the petitioner rebuts the presumption with clear and convincing

evidence."  Companonio v. O'Brien, 672 F.3d 101, 109 (1st Cir. 2012).  This "presumption of

correctness applies to factual determinations made by both state trial and appellate courts."

Id. (citing Clements v. Clarke, 592 F.3d 45, 47 (1st Cir. 2010)).  As detailed below, this court

concludes that the state court's analysis was neither an unreasonable application of federal

law, nor was the decision based on an unreasonable determination of the facts.

**B.    Procedural Default**

The Respondent contends that Andrade's challenge to the jury selection process has

been procedurally defaulted since there was no objection to the questions posed by the trial

judge.  See Resp. Mem. (Docket No. 26) at 8-10.  Consequently, the Respondent argues, this

court should not review the habeas claim on the merits, since it was decided by the state court

on an independent ground (the lack of objection).  For the reasons detailed herein, however,

this court concludes that the SJC addressed the merits of Andrade's challenge despite the

absence of any contemporaneous objection, and, therefore, there is no procedural bar to the

habeas court reaching the merits of Andrade's claim.

"When a state-law default prevents the state court from reaching the merits of a federal

claim, that claim can ordinarily not be reviewed in federal court."  Ylst v. Nunnemaker, 501 U.S.

[12]

797, 801, 111 S. Ct. 2590, 2593, 115 L. Ed. 2d 706 (1991).  "Procedural default of federal claims

in state court is an independent and adequate state-law ground barring habeas relief, . . . so

long as the state regularly follows the rule and has not waived it by relying on some other

ground[.]"  Jewett v. Brady, 634 F.3d 67, 76 (1st Cir. 2011) (internal citations omitted).  Under

Massachusetts law, "a claim not raised is waived" and is deemed to be procedurally defaulted.

Gunter v. Maloney, 291 F.3d 74, 78-79 (1st Cir. 2002).  See Hodge v. Mendonsa, 739 F.3d 34, 44

(1st Cir. 2013) (""We have held, with a regularity bordering on the monotonous, that the

Massachusetts requirement for contemporaneous objections is an independent and adequate

state procedural ground, firmly established in the state's jurisprudence and regularly followed

in its courts.'" (quoting Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010))).  It is also firmly

established that the appellate court's review of a conviction under a "substantial risk of miscar-

riage of justice" standard does not in and of itself constitute a decision on the merits.  "Limited

review of this sort 'does not work a waiver of the contemporaneous objection requirement.'"

Lynch v. Ficco, 438 F.3d 35, 45 (1st Cir. 2006) (quoting Horton v. Allen, 370 F.3d 75, 81 (1st Cir.

2004)).

On the other hand, the state court may waive a procedural default and elect to resolve a

claim on the merits, even despite the lack of objection below.  See Jackson v. Amaral, 729 F.2d

41, 44-45 (1st Cir. 1984), and cases cited.  "If the last state court to be presented with a

particular federal claim reaches the merits, it removes any bar to federal court review that

might otherwise have been available."  Phoenix v. Matesanz, 189 F.3d 20, 25-26 (1st Cir. 1999)

(quoting Ylst v. Nunnemaker, 501 U.S. at 801, 111 S. Ct. at 2593).  See also Lee v. Corsini, 777

F.3d 46, 55 (1st Cir. 2015) (habeas review available when there has been a resolution of a claim

[13]

on the merits by the state's highest court); Clarke v. Spencer, 582 F.3d 135, 143-44 (1st Cir. 2009) (where Massachusetts Appeals Court addressed defendant's claim on the merits, despite lack of objection at trial, there was no bar to federal habeas review), and cases cited.

In the instant case, the SJC stated that it was addressing the merits of Andrade's claim, applying the "abuse of discretion" standard applicable to a review of a trial judge's voir dire examination. Andrade, 486 Mass. at 547, 11 N.E.3d at 601 (citing Commonwealth v. Gray, 465 Mass. 330, 338, 990 N.E.2d 528, 536 (2013)). The Court then did, in fact, proceed to address Andrade's constitutional claims. Andrade, 486 Mass. at 547-49, 11 N.E.3d at 601-03. As the SJC made clear, the fact that the defendant did not object during trial would be relevant only if it found an abuse of discretion, at which time it would determine if the abuse resulted in a substantial likelihood of a miscarriage of justice. Id. at 547, 11 N.E.3d at 601. That stage was not reached, however, since the SJC concluded that there had been no abuse of discretion. See id. at 548-49, 11 N.E.3d at 602-03. Since the SJC addressed the merits of Andrade's federal constitutional claim, there is no bar to federal habeas review on the grounds of procedural default.

### C.    Standard of Review:  Selection of an Impartial Jury

As the SJC recognized, the Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by an impartial jury. Andrade, 468 Mass. at 547, 11 N.E.3d at 601-02. See Morgan v. Illinois, 504 U.S. 719, 726-27, 112 S. Ct. 2222, 2228-29, 119 L. Ed. 2d 492 (1992). "[T]he proper standard for determining when a prospective juror may be excluded for cause because of his or her views . . . is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his

[14]

instructions and his oath.'" Wainwright v. Witt, 469 U.S. 412, 424, 105 S. Ct. 844, 852, 83 L. Ed. 2d 841 (1985) (quoting Adams v. Texas, 448 U.S. 38, 45, 100 S. Ct. 2521, 2526, 65 L. Ed. 2d 581 (1980)).  "Impartiality is not a technical concept.  It is a state of mind.  For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula."  Dennis v. United States, 339 U.S. 162, 172, 70 S. Ct. 519, 523, 94 L. Ed. 734 (1950) (internal quotation omitted).  "Even so, part of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors."  Morgan v. Illinois, 504 U.S. at 729, 112 S. Ct. at 2230.  In connection with seating an impartial jury, "the trial court retains great latitude in deciding what questions should be asked on *voir dire*."  Mu'Min v. Virginia, 500 U.S. 415, 424, 111 S. Ct. 1899, 1904, 114 L. Ed. 2d 493 (1991).

Even on direct review, a trial judge's decision whether to strike a potential juror for cause is granted considerable deference.  See Wainwright v. Witt, 469 U.S. at 424-46, 105 S. Ct. at 852-53.  Such deference is appropriate because the trial judge "is in a position to assess the demeanor of the venire, and of the individuals who compose it, a factor of critical importance in assessing the attitude and qualifications of potential jurors."  Uttecht v. Brown, 551 U.S. 1, 9, 127 S. Ct. 2218, 2224, 167 L. Ed. 2d 1014 (2007).  Thus, while "[t]he trial judge is of course applying some kind of legal standard to what [she] sees and hears, . . . [her] predominant function in determining juror bias involves credibility findings whose basis cannot be easily discerned from an appellate record."  Wainwright v. Witt, 469 U.S. at 429, 105 S. Ct. at 855.  In the context of a habeas review, the determination of juror bias is considered to be a factual determination that is entitled to a presumption of correctness under 28 U.S.C. § 2254.  Id. at

430, 105 S. Ct. at 855; Darden v. Wainwright, 477 U.S. 168, 175, 106 S. Ct. 2464, 2469, 91 L. Ed. 2d 144 (1986).[5]  See also Patton v. Yount, 467 U.S. 1025, 1036, 104 S. Ct. 2885, 2891, 81 L. Ed. 2d 847 (1984) (in the habeas context, the partiality of a juror is a question of fact, not a mixed question of law and fact).  Consequently, federal habeas review of an objection to the trial judge's bias determination "must be doubly deferential."  White v. Wheeler, 136 S. Ct. 456, 460, 193 L. Ed. 2d 384 (2015) (internal quotation omitted).  The "critical question" on habeas review is whether the SJC's decision to affirm the trial judge's decisions to excuse jurors for cause was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement?"  Id. at 461 (internal quotation omitted).  As detailed more fully below, applying these standards compels the conclusion that Andrade's habeas petition should be denied.

**D.     Analysis of Andrade's State Court Decisions**

In the instant case, there is no question that the trial judge's questions were designed to elicit information consistent with the standard established by federal law, namely whether the potential juror's feelings about the lack of eyewitness testimony was such as to preclude the juror from performing his or her obligations as a juror in accordance with the instructions of the judge and his or her oath as a juror.  See Adams v. Texas, 448 U.S. at 45, 100 S. Ct. at 2526. Similarly, the SJC applied the appropriate standard when it recognized that the trial judge had to "determine whether jurors can set aside their own opinions, properly weigh the evidence

_____

[5]  As detailed below, Andrade contends that the findings made in the instant case are not entitled to deference since the trial judge did not follow the appropriate procedure in selecting the jury.  This court disagrees.

and follow the instructions of the judge." Andrade, 468 Mass. at 547-48, 11 N.E.3d at 602

(internal punctuation and citation omitted).  Nevertheless, Andrade contends that the state

courts' decision was based on an unreasonable application of federal law, and that the decision

that the jurors should be excused was an unreasonable determination of fact.  In evaluating the

state court rulings, this court must examine the context surrounding the decisions to exclude

the potential jurors.  See Darden v. Wainwright, 477 U.S. at 176, 106 S. Ct. at 2469.  A review of

the record establishes that the trial judge's decisions were appropriately upheld by the SJC.

Wainwright v. Witt, 469 U.S. at 434, 105 S. Ct. at 857 ("the question is not whether a reviewing

court might disagree with the trial court's findings, but whether those findings are fairly

supported by the record.").

Here the trial judge questioned the potential jurors individually, and in the presence of

counsel.  As noted above, defense counsel helped formulate the initial questions.  There was

also no objection by counsel when the trial judge rephrased the question because it was too

clumsy as initially posed.  SA II:188.  The judge and counsel had the opportunity to view each

potential juror's response to the questions posed, and to assess their demeanor.  Many of the

prospective jurors unequivocally answered that the potential reliance on circumstantial

evidence only would not impair their ability to perform their duties as jurors, and that they

would be able to follow the court's instructions.  These answers contrasted sharply with the

answers of the 13 potential jurors at issue here, some of which were unequivocal in that they

reflected a certainty that they could not convict absent eyewitness testimony, and others of

which were more equivocal so that the trial judge was called upon to consider their answers to

other questions and their demeanor in order to determine if the juror should be excused for

cause.  Reviewing the entire jury selection process, this court cannot conclude that there was "no basis" for the trial judge's decision to justify habeas relief.  See White v. Wheeler, 136 S. Ct. at 461-62 (despite ambiguous answers, trial judge's decision to excuse juror did not violate clearly established federal law and appellate court's ruling that there was no error was "not beyond any possibility for fairminded disagreement.")

Neither attorney took any exception to the trial judge's decision to excuse any of the jurors for cause.  The record reflects, however, that counsel were given the opportunity to communicate with the judge if they so desired, and that they took the opportunity to do so in other contexts.  See, e.g., SA II:258-62 (issue whether potential juror understood English sufficiently – both counsel agreed to excuse); SA III:383-85 (Commonwealth asks for potential juror to be called back for further questioning).  The reviewing court may appropriately consider the absence of an objection in assessing a decision to excuse a juror for cause, even though an objection may not be necessary to preserve the issue for appeal.  Uttecht v. Brown, 551 U.S. at 18, 127 S. Ct. at 2229 (court may "take into account voluntary acquiescence to, or confirmation of, a juror's removal.  By failing to object, the defense did not just deny the conscientious trial judge an opportunity to explain his judgement or correct any error.  It also deprived reviewing courts of further factual findings that would have helped to explain the trial court's decision.").  Counsel's silence under the circumstances presented here is confirmatory evidence of the validity of the trial judge's determination that the proposed juror could not fulfill his or her obligation to be impartial.

Andrade's contention that the trial judge's decisions were unsupportable because some of the answers were ambiguous is equally unavailing.  Again, the record indicates that "no one

[18]

in the courtroom questioned the fact that [the potential juror's] beliefs prevented [him or her] from sitting.  The reasons for this, although not crystal clear from the printed record, may well have been readily apparent to those viewing [the potential jurors as they] answered the questions."  <u>Wainwright v. Witt</u>, 469 U.S. at 435, 105 S. Ct. at 857-58.  Moreover, ambiguity in the testimony of jurors who were challenged for cause "is insufficient to overcome the presumption of correctness owed to the trial court's findings."  <u>Patton v. Yount</u>, 467 U.S. at 1040, 104 S. Ct. at 2893.  Finally, it is well established that "when there is ambiguity in the prospective juror's statements, the trial court is entitled to resolve it in favor of the State." <u>White v. Wheeler</u>, 136 S. Ct. at 461 (internal quotations omitted).  Viewing the jury selection process in context, there is no evidence that the trial judge abused her discretion in excusing the jurors, and the SJC's "decision, like the trial court's, was not contrary to, or an unreasonable application of, clearly established federal law."  <u>Uttecht v. Brown</u>, 551 U.S. at 20, 127 S. Ct. at 2230.

Andrade contends that his constitutional rights were violated because the trial judge excluded all jurors "who were skeptical of circumstantial evidence but constitutionally unbiased."  Pet. Mem. at 8.  Thus, Andrade contends that the trial judge violated his constitu-tional rights by not following up with the jurors to determine if they could nevertheless put aside their concerns and follow the law as instructed by the trial judge.  <u>See id.</u> at 31.  Not only does this argument misconstrue the questions posed to the potential jurors, but it seeks to impose a requirement not found in federal law.

Andrade relies on a line of cases addressing the disqualification of jurors in death penalty cases.  For example, in <u>Adams v. Texas</u>, the questions posed to potential jurors

"exclude[d] jurors whose only fault was to take their responsibilities with special seriousness or to acknowledge honestly that they might or might not be affected."  Adams v. Texas, 448 U.S. at 50-51, 100 S. Ct. at 2529.  The Court held that while "the State may bar from jury service those whose beliefs about capital punishment would lead them to ignore the law or violate their oaths[,]" defendants facing the death penalty were entitled to have jurors who "aver that they will honestly find the facts and answer the questions in the affirmative if they are convinced beyond reasonable doubt, but not otherwise, yet who frankly concede that the prospects of the death penalty may affect what their honest judgment of the facts will be or what they may deem to be a reasonable doubt."  Id. at 50, 100 S. Ct. at 2529.  Thus, the appropriate question to be asked is whether the jurors would be able to follow the law, regardless of their position on the death penalty.  See Darden v. Wainwright, 477 U.S. at 168-69, 106 S. Ct. at 2465 ("the proper test is whether a juror's views on capital punishment would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.").

As an initial matter, it must be noted that this case is not a death penalty case and does not arise in the "special context of capital sentencing."  Lockhart v. McCree, 476 U.S. 162, 183, 106 S. Ct. 1758, 1770, 90 L. Ed. 2d 137 (1986).  Moreover, the proposed jurors here were expressly asked if the fact that there was no eyewitness testimony "in and of itself" would prevent the juror from finding the defendant guilty, even if the Commonwealth could otherwise convince the juror, beyond a reasonable doubt, of the defendant's guilt.  Answers to the effect that the proposed juror could not convict without eyewitness testimony "made it 'unmistakably clear' that they could not be trusted to 'abide by existing law' and 'to follow conscientiously the

instructions' of the trial judge." Lockett v. Ohio, 438 U.S. 586, 596, 98 S. Ct. 2954, 2960, 57 L.

Ed. 2d 973 (1978) (quoting Boulden v. Holman, 394 U.S. 478, 484, 89 S. Ct. 1138, 1142, 22 L. Ed.

2d 433 (1969). Contrary to Andrade's contention, no further inquiry is required. Id. The trial

judge does not need to "engage[] in explicit analysis regarding substantial impairment; even the

granting of a motion to excuse for cause constitutes an implicit finding of bias." Uttecht v.

Brown, 551 U.S. at 7, 127 S. Ct. 2223. Where "the trial judge is left with the definite impres-

sion that a prospective juror would be unable to faithfully and impartially apply the law[,]" it is

appropriate for the judge to strike the juror, and the reviewing court must defer to the trial

judge's decision. Wainwright v. Witt, 469 U.S. at 425-26, 105 S. Ct. at 852-53.

Andrade argues that the deferential AEDPA standard of review is inapplicable in the

instant case "because the State courts erred in their application of Federal law when rendering

the essential findings." Pet. Mem. at 24 (citing Panetti v. Quarterman, 551 U.S. 930, 953, 127 S.

Ct. 2842, 168 L. Ed. 2d 662 (2007) ("When a state court's adjudication of a claim is dependent

on an antecedent unreasonable application of federal law, the requirement set forth in

§ 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference of

AEDPA otherwise requires.")). Andrade relies on Sanchez v. Roden, 753 F.3d 279, 300 (1st Cir.

2014), where the First Circuit concluded that the state court had unreasonably applied clearly

established federal law because it failed to inquire into all of the facts and circumstances

relevant to the defendant's claim of racial discrimination in connection with the selection of his

jury. In that context, however, the Supreme Court had "made it clear" that in reviewing a

contention that a peremptory challenge was based on race, "all of the circumstances that bear

upon the issue of racial animosity must be consulted." Id. at 299 (internal quotations omitted).

[21]

In the instant case, however, as detailed above, the trial judge's questions complied with federal law, and there was no obligation for the trial judge to explore the potential juror's state of mind any further.  The deferential standard of the AEDPA, as well as a review of the context surrounding the prospective jurors' answers, support the SJC's conclusion to uphold the trial judge's decisions.

Finally, Andrade argues that by asking a second question about circumstantial evidence, the trial court coerced the jury into a guilty verdict.  As the SJC found, the trial judge did not command the jury to convict, nor did she instruct the jury to ignore the fact that the Common-wealth had no direct evidence of the defendant's guilt.  Andrade, 468 Mass. at 548-49, 11 N.E.3d at 602-03.  The SJC concluded that "[t]he judge properly instructed the jury about the differences between direct and circumstantial evidence, that whether the Commonwealth's case was based solely on circumstantial evidence was for the jury to decide, and that whether the evidence is direct or circumstantial, the Commonwealth must prove the defendant guilty beyond a reasonable doubt from all of the evidence in the case."  Id. at 549, 11 N.E.3d at 603.  The decision of the SJC rejecting Andrade's contention that the questions posed by the trial judge "invaded the province of the jury and had the effect of selecting a jury that was predisposed to convicting the defendant based on the evidence the Commonwealth would introduce at trial" is not contrary to or an unreasonable application of clearly established federal law.  See id. at 547, 11 N.E.3d at 601.

In Lowenfield v. Phelps, 484 U.S. 231, 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988), a deliberating jury had been polled as to whether further deliberation would enable them to reach a verdict, and was then given a supplemental instruction about deliberating.  Soon

[22]

thereafter, the jury returned a verdict sentencing the defendant to death.  Id. at 234-35, 108 S.

Ct. at 549.  The defendant brought a habeas petition in federal court raising the issue whether

the trial judge had coerced the sentence from the jury.  Id. at 236, 108 S. Ct. at 550.  Without

discussing the constitutional basis for such a claim, the Court held that "[o]ur review of

petitioner's contention that the jury was improperly coerced requires that we consider the

supplemental charge given by the trial court 'in its context and under all the circumstances.'"

Id. at 237, 108 S. Ct. at 550 (citation omitted).  Finding no "coercion" under the facts presented,

the Court added, "we do not mean to be understood as saying other combinations of supple-

mental charges and polling might not require a different conclusion.  Any criminal defendant,

and especially any capital defendant, being tried by a jury is entitled to the uncoerced verdict of

that body."  Id. at 241, 108 S. Ct. 552.

    The First Circuit has characterized this language as "scant precedent on which to hang

[a] § 2254 claim" and questioned whether such "dicta" is actually clearly established law which

would support a habeas petition.  Clements v. Clarke, 592 F.3d 45, 57 (1st Cir. 2010).  As the

First Circuit has held, "[t]o the extent that *Lowenfield* does constitute clearly established federal

law, that law can be summarized as follows: defendants have a right against coerced jury

verdicts, and any potential coercion should be measured based on the totality of the

circumstances."  Id.  Moreover, "*Lowenfield's* totality-of-the-circumstances test, to the extent

that it constitutes clearly established federal law to begin with, allows for a great deal of

leeway."  Id.  In the instant case, the SJC applied the correct standard and analyzed the trial

judge's actions in the context of the totality of the circumstances.  Andrade, 468 Mass. at 548-

49, 11 N.E.3d at 602-03.

The SJC's decision is supported by the record.  The trial judge's questioning about circumstantial evidence constituted two of four questions propounded to jurors individually which could lead to recusal for cause.  See note 2, supra.  The questions were not unduly emphasized.  After the jury was selected, but before any opening statements, the judge's instructions stressed that the defendant was presumed innocent and that the Commonwealth had the burden of proving his guilt beyond a reasonable doubt.  SA III:400-01.  There was no mention of the significance of direct or circumstantial evidence at any time during the trial judge's preliminary instructions.  SA III:400-409.  In her jury charge, the trial judge gave the standard instructions regarding the difference between direct and circumstantial evidence, and the fact that there is "no difference in probative value between direct and circumstantial evidence."  SA V:1237.  She clearly instructed the jury that "[w]hether the evidence is direct or circumstantial, the Commonwealth must prove the defendant guilty beyond a reasonable doubt from all of the evidence in the case."  Id.  In addition, she instructed the jury that it was up to them to determine if the case was based solely on circumstantial evidence.  Id.  The record supports the SJC's decision that the trial judge's initial questioning during voir dire about a case based only on circumstantial evidence did not coerce the jury into a guilty verdict.

## IV.  CONCLUSION

For all the reasons detailed herein, this court concludes that the state court's decision was not an unreasonable application of clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts.  Therefore, this court

recommends to the District Judge to whom this case is assigned that Andrade's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.[6]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[6] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).